# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERRY CHANG and JASMINE SHIMODA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BD STANHOPE, LLC, ERIC GOODE, and SEAN MACPHERSON,<br><br>Defendants. | Civil Action No. 10 CIV 8577 (TPG)<br><br>**SETTLEMENT AGREEMENT AND RELEASE** |

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendants (as hereinafter defined) (together, "the Parties").

### RECITALS

WHEREAS, Plaintiffs Sherry Chang and Jasmine Shimoda filed an FLSA Collective Action and Rule 23 Class Action Complaint on November 12, 2010 (*"Complaint"*);

WHEREAS, the Complaint asserted class action claims under the New York Labor Law and collective action claims under the Fair Labor Standards Act and sought recovery of, among other things, unpaid minimum wages, unpaid service charges, liquidated damages, and attorneys' fees and costs;

WHEREAS, Defendants denied and continue to deny all of the allegations made by Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the Parties have engaged in substantial discovery, including but not limited to reviewing thousands of documents exchanged by the Parties, and analyzing time and payroll records, tip records and event contracts;

WHEREAS, the Parties participated in a full-day mediation before Mediator Margaret Shaw under the auspices of JAMS on December 6, 2011; Even though a settlement was not reached at mediation, the parties continued to negotiate a settlement and in-person settlement meetings were held.

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members;

WHEREAS, this Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the litigation.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1.    DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Agreement.** "Agreement" shall mean this Joint Stipulation of Settlement and Release.

1.2    **Claims Administrator.** "Claims Administrator" shall mean Kurtzman Carson Consulting, LLC.

1.3    **Class Counsel.** "Class Counsel" shall mean Fitapelli & Schaffer LLP.

1.4    **Class Members.** "Class Members" shall mean all FLSA Class Members and all Rule 23 Class Members, as defined below.

1.5    **Court.** "Court" shall mean the United States District Court for the Southern District of New York, the Honorable District Judge Griesa presiding.

1.6    **Covered Period.** "Covered Period" shall mean the period from November 12, 2004 through March 31, 2012. The "FLSA Covered Period" shall mean November 12, 2007 through the date a Consent to join was filed.

1.7    **Defendants.** "Defendants" shall mean BD STANHOPE LLC, Eric Goode, and Sean MacPhearson.

1.8    **Defendants' Counsel.** "Defendants' Counsel" shall mean Jackson Lewis LLP. For the purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Felice B. Ekelman, Esq. of Jackson Lewis LLP.

1.9    **Effective; Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of (1) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (2) the Court's entry of a final order and judgment after resolving any appeals.

1.10 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account(s) created and controlled by the Claims Administrator.

1.11 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.12 **FLSA Class Member.** "FLSA Class Members" shall consist of all individuals who filed Consent to Join Forms with the Court prior to March 31, 2012.

1.13 **Litigation.** "Litigation" shall mean *Chang et al., v BD Stanhope LLC et al.*, 10-cv-8577 pending in the United States District Court for the Southern District of New York.

1.14 **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Payment after deductions for Court-approved attorneys' fees and costs as described in Section 3.2, Court-approved service awards to Plaintiffs as described in Section 3.3, and Claims Administrator costs, as described in Section 2.1,

1.15 **Rule 23 Class; Rule 23 Class Members.** "Rule 23 Class" shall mean all tipped employees employed by BD Stanhope who worked at the venues known as Hiro Ballroom and Cabanas ('Covered Venues") in the positions of server, cocktail server, bartender, barback and busser ("Covered Positions"), between November 12, 2004 through March 31, 2012, except that any individual who timely submits an exclusion request shall not be included in the Rule 23 Class. A member of the Rule 23 Class is a "Rule 23 Class Member."

1.16 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.17 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.18 **Parties.** "Parties" shall mean Plaintiffs and Defendants.

1.19 **Plaintiffs.** "Plaintiffs" shall refer to Sherry Chang and Jasmine Shimoda and shall also include any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.20 **Qualified Class Member.** "Qualified Class Member" shall mean Class Members who do not opt out pursuant to Section 2.6 of this Agreement.

1.21 **Releasees.** "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, shareholders, investors, agents, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.22   **Settlement Payment.** "Settlement Payment" shall mean the $925,000.00 payment, plus any interest accrued as provided in Section 3.1(A).

2.     **APPROVAL AND CLASS NOTICE**

2.1    **Retention of Claims Administrator.** Within 5 calendar days after the execution of this Agreement, the Parties shall retain a Claims Administrator to administer the settlement process. The Claims Administrator shall be responsible for mailing the notice, calculating Class Members' share of the Net Settlement Fund, and cutting and mailing checks to Qualified Class Members as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. The Claims Administrator's fees shall be paid from the Settlement Payment.

2.2    **Preliminary Approval by the Court.** On or before July 12, 2012, Plaintiffs will submit to the Court a Motion for Conditional Certification of the Settlement Class and for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things: (a) a proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing which is appended hereto as Exhibit A; (b) a proposed Order Granting Preliminary Approval and certifying the New York Class pursuant to Fed. R. Civ. P. 23; and (c) a Memorandum of Law in support of the Motion for Preliminary Approval. The Parties will meet and confer in good faith to draft these submissions. The Preliminary Approval Motion will include the findings required by Fed. R. Civ. P. 23(a) and 23(b)(3) and will seek the setting of dates for opt-outs, objections, and a Fairness Hearing. Defendants will not oppose the Preliminary Approval Motion, other than by participating in the drafting of the proposed Order Granting Preliminary Approval, Memorandum of Law and Notice as set forth herein.

2.3    **Denial of Preliminary Approval.** If the Court denies the Motion for Preliminary Approval, then the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement addressing the issues raised by the Court. Should reconsideration and/or the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and Defendants retain the right to contest whether this case should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.4    **Final Order and Judgment from the Court.** Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed upon by the Parties. The proposed Final Order and Judgment will, among other things: (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.6, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement and by the FLSA consents to join filed in connection with

this lawsuit both to date and as further contemplated herein, and (f) incorporate the terms of this Settlement and Release. The Parties will meet and confer in good faith to draft the proposed Final Order and Judgment.

2.5    **Class Notice**

    A.    Within 14 days following the date on which the Court grants Preliminary Approval, Defendants will provide the Claims Administrator with a list, in electronic form, of the (1) names, (2) last known addresses, (3) social security numbers, (4) dates of employment of each Class Member, (5) the hours worked by each Class Member at private events at the Covered Venues in Covered Positions during the Covered Period, and (6) the hours worked by each Class member at the Covered Venues in Covered Positions which were not during private events during the Covered Period. Class Counsel shall be provided with the above list without the Class Members' social security numbers.

    B.    Within 35 days of the date on which the Court grants Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A to all Class Members, using each individual's last known address as recorded in Defendants' records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below. Defendants' Counsel and Class Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process, except that Class Counsel shall not be provided with the Class Members' social security numbers.

    C.    If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt up to two re-mailings per Class Member. The Claims Administrator shall, within 10 calendar days after the first mailing of the Notice, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

    D.    The Claims Administrator shall provide the Parties with weekly summaries as to the status of Notice mailings including the number of Notices which were re-mailed, the number of successful and unsuccessful mailings, and the number of Class Members who have opted-out.

2.6    **Class Member Opt-Out.**

    A.    Any Class Member may request exclusion from the Class by "opting out." Any Class Member who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address and

> telephone number of the Class Member to be valid. It must also contain the words "I elect to exclude myself from the settlement in *Chang et al., v BD Stanhope LLC et al.*," in order to be valid. To be effective, such Opt-Out Statement must also be sent via mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 45 calendar days after the date on which the Claims Administrator mails the Notice. The 45-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 45-day period for any such Class Member will begin to run from the date of the second mailing to such Class Member, unless another period is set by the Court. The Claims Administrator shall not attempt more than 2 supplemental mailings of the Notice. The end of the "Opt-Out Period" shall be 45 days after the last day on which the Claims Administrator makes a mailing to a Class Member, but in any case no later than 7 calendar days before the date of the Fairness Hearing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period.

B.   The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

C.   Defendants shall have the right to revoke this agreement in the event that 1) 10% or more of the Class Members file Opt-Out Statements by the end of the Opt-Out Period or 2) 20% or more of FLSA Class Members file Opt-Out Statements, or otherwise refuse to participate in the settlement as defined by this Stipulation, by the end of the Opt-Out Period. If Defendants wish to exercise this right, they must do so by written communication to Class Counsel, received by Class Counsel no later than ten (10) days after the end of the Opt-Out Period.

2.7   **Objections to Settlement.**

A.   Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 45 calendar days after the Claims Administrator mails the Notice. The statement must contain the name, address and telephone number of the Class Member to be valid. It must also contain the words "I object to the settlement in *Chang et al., v BD Stanhope LLC et al.*," and set forth the reasons for the

6

        objection. The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 3 calendar days after the end of the Opt-Out period.

      B.    An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. Any Class Member who has requested exclusion may not submit objections to the settlement.

      C.    The Parties may file with the Court written responses to any objections no later than 7 calendar days before the Fairness Hearing.

2.8    **Motion for Judgment and Final Approval.** No later than 14 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.9    **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members who did not timely opt-out, (d) Order the Claims Administrator to distribute settlement checks to class members, service awards, if any, and attorneys' fees and costs,, €Order the dismissal with prejudice of all claims asserted in the litigation and the claims of all Class Members who did not opt-out, (f) incorporate the terms of this Settlement and Release, and (g) retain jurisdiction as necessary.

2.10    **Effect of Failure to Grant Final Approval.** In the event the Court does not enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties agree to proceed as follows. The Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement to address the issues raised by the Court and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

      A.    The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendants retain the right to contest whether this Litigation should be maintained as a class action or collective action, and to contest the merits of the claims being asserted by Plaintiffs in this action.

      B.    The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class

7

Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

3. **SETTLEMENT TERMS**

3.1 **Settlement Payment.**

    A.    Defendants agree to pay $925,000.00, which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs; (b) all amounts to be paid to Class Members; (c) Court-approved service payments to Plaintiffs and opt-ins; and (d) the Claims Administrator's fees. Other than the employer's share of payroll taxes as described in Section 3.5(C), Defendants will not be required to pay more than $925,000.00.

    B.    By no later than 10 days after the Court grants final approval of the Settlement, Defendants shall deposit $925,000.00 into the Escrow Account. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Payment. If Defendants fail to deposit the entire $925,000.00 into the escrow account, the District Judge will direct the Clerk of the Court to enter judgment jointly and severally against all Defendants in the amount of $925,000.00. Plaintiffs will be reimbursed all reasonable attorneys' fees and costs incurred in enforcing the judgment.

    C.    Within 14 days of the Effective Date, the Claims Administrator will distribute the Settlement Fund as follows:

        (1)    Class Counsel's Court-approved attorneys' fees and costs as described in Section 3.2(A).

        (2)    Claims Administrator's fee.

        (3)    Court-approved service payments as described in Section 3.3.

        (4)    Qualified Class Members Settlement Payment as described in Section 3.4.

3.2 **Settlement Amounts Payable as Attorneys' Fees and Costs.**

    A.  Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Settlement Payment as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment. Defendants will not oppose such applications.

    B.  The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's

8

consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.3 **Service Payments to Plaintiffs.** Plaintiffs Sherry Chang and Jasmine Shimoda will apply to the Court to receive $10,000.00, each from the Settlement Payment for services rendered to the Class. Defendants will not oppose such application. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.4 **Distribution to Qualified Class Members.**

  A. Qualified Class Members will be deemed eligible for a payment hereunder.

  B. Minimum Payment to Qualified Class Members. Notwithstanding the formulas below, no Qualified Class Member will be awarded a payment that is less than $150.00. In the event that a Qualified Class Member's settlement share under the calculation set forth in Section 3.4(C) is less than $150.00, his or her settlement share will be increased to $150.00 and subtracted from the Net Settlement Fund, and all other Qualified Class Members' settlement shares will be recalculated to offset this increase.

  C. A Qualified Class Member's proportionate share of the Net Settlement Payment shall be determined by the Claims Administrator pursuant to the formula set forth below:

   (1) A Qualified Class Member's proportionate share of the Net Settlement Fund shall be determined by the Settlement Administrator pursuant to the formulas agreed upon by the Parties.

   (2) Formula for Valuing the New York Labor Law Section 196-d claim ("196-d Claim"): The value of the 196-d claim shall be 75% of the Net Settlement Fund, and shall be paid according to the following formula: (1) compute the total number of hours worked by each Class Member at a Covered Venue in a Covered Position at private events from November 12, 2004 through February 15, 2010, ("196-d Claim Period") and assign one point for each such hour; (2) divide the total number of points for each

9

        Class Member at a Covered Venue in a Covered Position at private events during the 196-d Claim Period by the total number of points by all Participating Class Members at Covered Venues in Covered Positions at private events during the 196-d Claim Period; (3) multiply the amount derived in (2) by 75% of the Net Settlement Fund to compute the Qualified Class Member's "196-d Benefit;"

  (3)    Formula for valuing the Minimum Wage/Tip Pool claim: The parties estimate the Minimum Wage/Tip Pool claim to be valued at 25% of the Net Settlement Fund, which shall be allocated as a recovery for claims relating to tips and the tip credit, and shall be paid according to the following formula: (1) compute the number of hours worked by each Class Member in a Covered Position at the Covered Venues other than during private events, during the period November 12, 2004 and March 31, 2012, and assign one point for each such hour; (2) for any FLSA Class Member who worked hours other than during private events at the Covered Venues in a Covered Position during the FLSA Covered Period, assign one additional point to any such hour worked ("FLSA Bonus"); (3) add the total points in (1) and (2) above; (4) divide the total number of points awarded to each individual Class Member by the total number of points assigned to all Participating Class Members; and (5) multiply the amount derived in (4) by 25% of the Net Settlement Fund to compute the Qualified Class Member's "Tip Pool Benefit;"

  (4)    For each individual participating Class Member, their "Net Settlement Payment" will be calculated by adding together the individual's 196-d claim and Minimum Wage/Tip Pool Claim.

D.   Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

E.   The Claims Administrator shall mail to all Qualified Class Members their proportionate share of the Net Settlement Fund. The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information.

F.   Qualified Class Members will have ninety (90) calendar days from the date of the mailing of the settlement checks to redeem their settlement payments. If Qualified Class Members do not redeem their settlement payment checks within the 90 day period, their settlement checks will be void. If a Qualified Class Member alerts Class Counsel, Defendants' Counsel, or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and

          reissue that Qualified Class Member's settlement check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

G. Any un-cashed settlement checks and all amounts remaining in the net settlement fund one hundred thirty-five (135) days after the first mailing of the settlement checks will revert to Defendants. The Claims Administrator will mail a check for all unclaimed funds to Defendants' Counsel within ten (10) days after the expiration of the one hundred thirty-five (135) day period. If a Class Member does not cash the settlement checks, that Class member will not be subject to the release provisions in Section 4 of this agreement.

H. All payments to Qualified Class Members made pursuant to this Agreement shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such Settlement Payments will not entitle any Class Member to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place during the Class Period, nor will it entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement that the Settlement Payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Class Period).

3.5 **Taxability of Settlement Payments.**

    A. For tax purposes, 25% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as W-2 wage payments and 75% of such payments shall be treated as 10-99 non-wage income as liquidated damages and interest.

    B. Minimum Payments issued to Qualified Class Members shall be treated as liquidated damages and prejudgment interest.

    C. Payments treated as W-2 wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.5(A) and (B) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive a Form 1099 for

11

this payment. Any Service Payments made pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

D. Defendants shall be responsible for any and all applicable employer tax contributions associated with W-2 wage payments, including but not limited to Defendants' share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Payment, and shall not be paid out of the Net Settlement Payment. The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendants' responsibility.

E. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)). Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

## 4. RELEASE

4.1 **Release of Claims.** Upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, each Qualified Class Member, who does not timely opt-out pursuant to this agreement (and who cashes a settlement check) ,on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges all Releasees from all New York Labor Law claims that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation through the date on which the Court grants preliminary approval of the settlement. Each Qualified Class Member who is also an FLSA Class Member shall also release the Releasees from all Fair Labor Standards Act claims that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation through the date on which the Court grants preliminary approval of the settlement.

> Qualified Class Members shall be issued settlement checks with the following language:
>
>> By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Chang et al., v BD Stanhope LLC et al.*, 10-cv-8577 and release Defendants from all wage and hour claims under the Fair Labor Standards Act which have been brought in the Litigation or that are based on the same facts and circumstances as the

    claims in the Litigation, including but not limited to minimum wage claims for all time periods through March 31, 2012, and expressly release any such claims.

    The Claims Administrator will provide Defendants with a photocopy of each endorsed check, which Defendants will then file with the Court, thereby releasing any FLSA claims of Qualified Class Members who are not already FLSA Class Members.

4.2  **Release of Fees and Costs for Settled Matters.** Plaintiffs, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class.

4.3  **No Assignment.** Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof. FLSA Class Members who currently are in bankruptcy and/or whose claims properly belong, in whole or in part, to their bankruptcy estate, shall take the steps necessary to ensure that the trustee in bankruptcy waives any claim in their behalf in exchange for the payment made hereunder.

4.4  **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.  **INTERPRETATION AND ENFORCEMENT**

5.1  **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party,

agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2 **No Publicity.** The Parties and Class Counsel agree that they will not in any manner publicize the terms of this Settlement Agreement and Release, which includes notifying any member of the media regarding the terms and conditions of the settlement and includes posting or disseminating the terms and conditions of the settlement on any social media (including Law 360, Eater, Grub Street, or similar media outlets) or Class Counsel's website. Such prohibition extends to dissemination of any information, whether oral, electronic or in any document form including but not limited to providing copies of this Settlement Agreement and Release, information regarding the terms of the Settlement Agreement and Release, or the filing of any pleadings with the Court including the Motion for Preliminary Approval and or the Motion for Final Approval of the Settlement Agreement and Release. Dissemination of this Settlement Agreement and Release and the terms set forth herein shall be limited to filing documents with the Court as is necessary to effectuate the Settlement Agreement and Release. If a media outlet independently publishes a story regarding this settlement, this section 5.2 will not be breached. Further, if Westlaw and/or Lexis publish a decision regarding the settlement, this section 5.2 will not be breached.

5.3 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Qualified Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, trustees in bankruptcy, attorneys and assigns.

5.5 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

5.6 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8 **Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated thereby.

5.11 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument. The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

5.13 **Facsimile/Electronic Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED: July 9, 2012

BD STANHOPE LLC

By: _____
Richard Born

Its: managing member

15

DATED: July 11, 2012                Eric Goode
                                    _____

DATED: July 11, 2012                _____
                                    Sean MaCpherson


DATED: July 6, 2012                 Fitapelli and Schaffer
                                    475 Park Ave South, 12th Floor
                                    New York, New York 10016
                                    (212) 300-0375
                                    (212) 481-1333

                                    By: _____
                                        Brian Schaffer
                                        Signing as to Parag. 5.2 Only


DATED: July 6, 2012                 JASMINE SHIMODA
                                    _____

DATED: July 6, 2012                 SHERRY CHANG
                                    _____


4846-6513-3840, v. 1

16